Ordered up to the Court of Errors, for the adjudication of the question made by the 3d ground of appeal.

Curia, per

DunkiN, Ch.
The testimony seems to the Court to establish very satisfactorily that the loan to Geni. Cantey, in October, Í836, was not an original transaction, but that it was also to secure payment of an existing indebtedness to the institution, amounting to more than fifteen thousand dollars. In the argument here it was not questioned that this indebtedness was satisfied or extinguished from the proceeds of the loan made in October, 1836.. Yielding this conclusion the appeal rests on the 3d ground, to wit, that “ail mortgages taken by the Bank are recorded from their date, by virtue of the 5th section of the charter.”
*252 Oil this point it is proposed to add very little to tlie observations made in the decree. Having power, under the other sections of the charter, to discount notes and bills of exchange and to transact other banking business, and also to take and hold real and personal estate, it would seem difficult to deny the power to this institution, which is exercised by all other banks, of taking a mortgage or assignment of property, real or personal, to secure an existing or contemplated indebtedness. But, although this power would seem to result from other powers expressly granted, as well as from the 16th clause of the 1st section authorising the President aud Directors generally todo and execute all such acts as it may appertain to them to do, subject to the rules, &c. prescribed in the Act, yet no power is expressly vested in the bank to take a mortgage, except in those sections which establish and regulate the loan office department. Mortgages taken by the bank for any other indebtedness than that contracted under the loan office department are not mortgages taken “for loans of money under this Act,” (expressions which clearly point to some foregoing and express authority to take a mortgage) but they are mortgages taken under the incidental and implied powers of a banking corporation. The Bank of the State stands on the same footing with such mortgagees, and are bound to the same diligence. It may be added that, throughout the Act, the term ‘ loan’ is used in contradistinction to ‘ discounting paper,’ and is uniformly applied to the special accommodations to be made to the citizens to a limited amount, on a single name, but on collateral security to three times the amount loaned, and the mortgage expressly authorized to be taken is always to secure the loans thus authorized to be made.
There is no doubt of the power of the Legislature. ■ They may give a priority to public securities, as in the case of the paper medium loan office; or they may prefer debts due to the public, as in the administration of the assets of a deceased person. In the same manner it would be competent for that body, however invidious the enactment, to give a preference to all mortgages taken by the Bank of the State, apd, indeed, to all debts, of whatever kind, contracted with that institution. They might place all notes discounted at the Bank of the State on the same footing with debts due to the public in the administration of assets. But such preference should be clearly given, and would not, and ought not to, be left to doubtful interpretation, or inference. It is believed that no such priority has ever been claimed by the Bank, as representing the State; certainly none such has ever been recognized by any judicial tribunal. But, if the Bank be nothing else, than the Treasury of the State, a note discounted at that institution is a debt due to the public, and the inference would be too palpable to be evaded, that the bills of the Bank are emitted in violation of the constitution of the United *253 States. The appellants have not, however, assumed this position. They rely on the specific preference accorded by charter of incorporation. In the judgment of the Court this does not extend to the mortgage described in the pleadings, and the appeal is therefore dismissed.
Johnston, Caldwell and Dargan, CC. and O’Neall, Evans, Wardlaw and Frost, JJ. concurred.